UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
TED SANTIAGO,

                           Plaintiff,            **MEMORANDUM & ORDER**
   -against-                                  03-CV-5694 (DRH) (ETB)

FAMILY RESIDENCE AND ESSENTIAL
ENTERPRISES INC.

                           Defendant.
------------------------------------------------------X
**A P P E A R A N C E S :**

**TED SANTIAGO**
Plaintiff Pro Se
109 Wilson Avenue
Medford, New York 11763

**KATHERINE J. RUSSO, ESQ.**
Attorney for Defendant
58 South Service Road, Suite 410
Melville, New York 11747

**HURLEY, District Judge:**

## INTRODUCTION

Plaintiff Ted Santiago ("Santiago") brought the present suit against his former employer, Family Residences and Essential Enterprises, Inc. ("FREE") for discrimination on the basis of race, color, gender and national origin, pursuant to 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII) and for disability discrimination, pursuant to the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. §§ 12112 to 12117.  FREE now moves for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56.  Santiago did not oppose the motion.   Because all of Santiago's allegations are time-barred, the motion is granted, and Santiago's case is dismissed in its entirety.

**BACKGROUND**

According to Santiago's narrative complaint and FREE's uncontroverted Rule 56.1 Statement,[1] FREE is "a not-for-profit agency that offers a wide variety of services for persons with mental illnesses, developmental disabilities, and traumatic brain injuries residing in Nassau and Suffolk Counties," including "group homes, apartments, respite programs, day treatment and vocational programs." Santiago is a Hispanic male, apparently blind in one eye, and wears sunglasses "to conceal my eye and the way it ha[s] gradually deformed." He has, by his own description, extensive professional experience caring for AIDS patients, the elderly, hospice residents, and others. FREE hired Santiago in October 1997 to work at its "Bubbles" bus-washing program as a "Crew Chief/Floater," which is an entry-level position.

At some point in 1998, Santiago reported that certain residents and staff members at one of FREE's residential facilities were having sex and using drugs. On June 1, 1999, Santiago was transferred into the position of "Job Coach/Employment Specialist." Although his salary was unchanged as a result of the switch, Santiago "didn't want that position," and believed that the transfer was in retaliation for previously reporting drug use and sexual activity in 1998.

Santiago alleges that during his time as a Job Coach, he once overheard one of his supervisors refer to him a "lazy spic." This is the one derogatory comment Santiago recalls

---

[1] Local Rule of Civil Procedure 56.1 of the U.S. District Court for the Eastern District of New York ("Rule 56.1") requires parties moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to admissible evidence in the record supporting each such fact. *See* Local Rule 56.1(a), (d). Where, as here, the opponent then fails to controvert the facts set forth in the movant's Rule 56.1 statement, those facts will be deemed admitted so long as supported by the admissible evidence — although they will not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003), *and Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001).

regarding his race or national origin.  Santiago also claims that he felt discriminated against because of his disability while working as a Job Coach, because he "heard hearsay" that his co-workers or supervisors "didn't think I could do the job" and "their perception of me wasn't good," and because on one, unspecified occasion he attended a meeting where everyone was wearing sunglasses — which Santiago is sure was meant to poke fun at him.

On December 6, 1999, FREE transferred Santiago to a position as a "Direct Care Counselor" at its Ridge Intermediate Care Facility ("Ridge").  FREE claims that a "routine review of employees' motor vehicle records," revealed that Santiago (whose work as Job Coach required him to drive) had been convicted of Driving While Impaired, on September 24, 1992, and that FREE's policy bars its employees from driving for the agency within ten years of any such conviction.  Although his salary remained the same, Santiago apparently saw the transfer as a demotion or constructive discharge; his complaint states that "I felt I was being worn down into quitting because Ridge had a very bad reputation for burning people out emotionally and physically."  Santiago believes that this action was racially motivated (because a co-worker named David Richmond "being white and having a D.U.I." was simultaneously promoted to a position as "Senior Counselor") and was also in retaliation for his reporting of drug use and sexual activity in 1998.

Santiago subsequently applied for, but did not receive, several promotions.  He first sought promotion to the "Assistant Supervisor" position at Ridge, but was "told because of my D.U.I. I could not receive such an appointment."  On February 7, 2000, FREE instead gave the position to Richmond, who had also applied; FREE explains that Richmond had by then re-established his eligibility to drive, by completing a New York State-sponsored "Drinking Driver

Program." Santiago next applied unsuccessfully for the Senior Counselor position that Richmond had vacated. FREE instead hired Cassandra Holmes, an African-American woman, on April 10, 2000. Finally, Santiago applied for the "Supervisor" position at Ridge, to which FREE instead promoted Richmond, on December 3, 2001. Santiago believes that he did not receive these promotions because of his race and gender.

At some point in 2001, Santiago met with Robin Griffin, a director of the residential program, "to tell her that [he] was being treated unfairly" regarding the above promotions, because of his "background." According to Santiago, Griffin "talked down to me . . . [l]ike I was a nobody," and "I felt degraded." Santiago reported Griffin's conduct as discriminatory. Santiago also believes that Robin Stone, another director at FREE, discriminated against him because she "just wasn't a friendly person."

In early 2002, Santiago decided to reapply for a position as Assistant Supervisor at Ridge that had been vacated. Effective March 4, 2002, FREE hired Mary Valladares to fill the position. Santiago claims that a managerial employee, Dina Nichols, "straight out told me that the reason I didn't get that position was because I am a man." This is the final discriminatory act alleged by Santiago.

On April 29, 2002, Santiago went on leave pursuant to the Family and Medical Leave Act, after injuring his back at work. Santiago did not return to work, and claims that he has been incapable of working since incurring his injury. FREE wrote Santiago on August 23, 2002, informing him that his FMLA leave of absence expired on July 22, 2002, and stating that "[i]n order to continue providing quality care to our clients, we must fill your vacant position. Your date of separation from employment is effective July 22, 2002." FREE's letter also added:

"When you are able to return to work, we urge you to reapply for a position."

Santiago filed a charge with the Equal Employment Opportunity Commission (EEOC) on January 15, 2003, complaining that "I, as well as other minorit[ies] . . . have been subjected to open and flagrant disparate treatment, a severe and pervasive hostile work environment, and retaliatory treatment due to prior complaints of discrimination." The EEOC wrote Santiago on August 29, 2003 to inform him that it had concluded an inquiry into his charges, and that its "review of the evidence . . . , including the information you provided, fails to indicate that a violation has occurred."

Santiago, appearing pro se, filed the present lawsuit pursuant to both Title VII and the ADA on December 23, 2003. In his narrative Complaint, Santiago alleged that from "June 99 till Present," FREE has discriminated against him based on his race, color, national origin, gender, and disability. Santiago alleged the following categories of discriminatory conduct: termination of employment, failure to promote, failure to accommodate his disability, unequal terms and conditions of his employment, retaliation, and "sexual harassment."

Magistrate Judge Boyle certified discovery as complete on November 1, 2004. FREE filed the present summary judgment motion on March 14, 2005, after timely serving Santiago with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" pursuant to Local Rule 56.2. The first page of the notice states in relevant part: "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing your own sworn affidavits or other papers as required by Rule 56(e)." The notice then included the full text of Rule 56, and further explained that "Rule 56 provides that you may NOT oppose summary judgment simply by relying on the

allegations in your Complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial." The notice further warns that "[i]f you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by the Defendant, the Court may accept Defendant's factual allegations as true." Plaintiff did not respond to the motion.

## STANDARD

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has offered some evidence that no genuine issue of material fact remains to be tried, the burden shifts to the non-moving party to provide similar evidence indicating that a genuine, triable issue remains. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). But it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions,"

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); Fed. R. Civ. P. 56(e).

Federal Rule of Civil Procedure 56(e) provides that if a non-moving party fails to oppose a summary judgment motion, judgment shall be entered against that party "if appropriate." The Second Circuit has warned, however, that "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment"; rather, when faced with an unopposed motion for summary judgment, a district court "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

Pro se plaintiffs deserve "special latitude on summary judgment motions," *McDonald v. Doe*, 650 F. Supp. 858, 861 (S.D.N.Y. 1986), and the submissions of pro se litigants must be "generously and liberally construed." *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994). Nevertheless, a pro se plaintiff's " 'bald assertion,' made without any evidentiary support, 'is not sufficient to overcome a motion for summary judgment.' " *Burke v. Royal Ins. Co.*, 39 F. Supp. 2d 251, 257 (E.D.N.Y. 1999) (quoting *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995)).

## DISCUSSION

In his Complaint, Santiago claims that FREE discriminated against him based upon his race, color, national origin and gender, in violation of Title VII, and based upon his disability, in violation of the ADA. All of his claims are thus pursuant to either Title VII or the ADA.

Title VII of the Civil Rights Act of 1964 makes it "unlawful for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADA provides that "[n]o [employer covered by the Act] shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

With regard to both Title VII and ADA claims, before filing a complaint in federal court, the claimant must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC and receiving a "right to sue" letter. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999). In New York, a claimant must file the charge within 300 days of the alleged unlawful act. *See id.* at 327-28; *see also Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens*, 2003 WL 22019073, at *3 (E.D.N.Y. Aug. 26, 2003) (citing 42 U.S.C. § 2000e-5(e)(1)). The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

The 300-day limitation period generally begins to run when the plaintiff knows or should know of the occurrence of the alleged discriminatory act. *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). That is, the time bar is based on when discriminatory acts happen, not when their effects are felt. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). The Supreme Court has made it clear that "discrete discriminatory acts are not actionable if time barred, even when

they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Discrete discriminatory acts" include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. By contrast, where a plaintiff claims to have suffered from a discriminatory hostile environment, "provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 103.

Santiago filed his Equal Employment Opportunity Commission charge on January 15, 2003. Therefore, in order to be timely, all of the discrete discriminatory acts that Santiago alleges must have occurred on or after March 21, 2002 (300 days prior to January 15, 2003). In the narrative complaint that he filed with this Court, Santiago recounts allegedly discriminatory acts that began in January 2001 and continued through February 2002. During deposition, Santiago discussed another act that he believed to be discriminatory: the hiring of Mary Valladares to fill a position sought by Santiago. (*See* Dep. of Ted Santiago, dated October 22, 2004, at 105, 111.) In support of its motion for summary judgment, FREE submitted the "Initial Employee Payroll Authorization" of Mary Valladares, which indicates that she assumed the Assistant Supervisor position sought by Santiago on March 4, 2002. (*See* Aff. of Kathryn J. Russo, dated Jan. 21, 2005, Ex. O.) Thus, March 4, 2002, is the date of the final, allegedly discriminatory act. March 4, 2002, is 317 days before Santiago filed his EEOC complaint.

Though the Complaint asserts that the alleged discrimination occurred between "June 99 till Present," Santiago does not complain of any particular acts after March 4, 2002. March 4,

2002, is outside of the 300-day limitation period established by New York law.  Accordingly, all of Santiago's Title VII and ADA claims are time-barred.

## CONCLUSION

For the above reasons, each of Santiago's claims are time-barred.  Accordingly, FREE's motion for summary judgment is GRANTED in its entirety.  The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: Central Islip, New York
March 31, 2006

/s/
Denis R. Hurley
Unites States District Judge